Bohn, J.
INTRODUCTION
The plaintiff/defendant in counterclaim, G. Conway, Inc. (“Conway”), a subcontractor on a project to build a retaining wall as part of the construction of a hotel in Burlington, Massachusetts (the “Project”), sued the defendant/third-party plaintiff, Tocci Building Corporation (“Tocci”) for enforcement of a mechanic’s lien, breach of contract and quantum meruit for money allegedly owed to Conway for work it performed on the Project.
Tocci answered Conway’s complaint, and filed a third-party complaint against Jaworski Geotech, Inc. (“JGI”), the engineering subcontractor on the project, and Keystone Masomy Contractor, Inc. (“Keystone”), the masonry subcontractor. Tocci’s third-party complaint against JGI alleges professional negligence, breach of contract, breach of express warranty, contribution and indemnification arising out of the collapse of the retaining wall.
In response to Tocci’s third-party complaint, JGI filed a counterclaim against Tocci for breach of contract and quantum meruit for unpaid fees that Tocci allegedly owes to JGI.
The matter is now before the court on the motion of Tocci for partial summary judgment as to the fourteenth affirmative defense asserted by JGI in its answer and counterclaim to the third-party complaint and on the motion of JGI for partial summary judgment and for entry of separate and final judgment on its counterclaim against Tocci. The fourteenth affirmative defense to the third-parly complaint contains JGI’s argument that Tocci’s claims are subject to a purported contractual limitation of liability of fifty thousand dollars, or JGI’s total fee on the Project, whichever is greater. Tocci’s position in this regard is that (1) in providing a certificate of insurance showing coverage in the amount of two million dollars, JGI agreed to be liable for up to two million dollars in professional liability; (2) the purported fifty-thousand-dollar limitation of liability provision did not become a part of the Geotechnical Services Contract and, therefore, does not limit JGI’s liability; and (3) JGI’s fourteenth affirmative defense should be rejected on the grounds of contract modification, estoppel and/or waiver.
The motion of JGI for partial summaiy judgment and for entry of separate and final judgment seeks dismissal of the breach of contract and breach of warranty claims asserted against it by Tocci as well as an award in quantum meruit for approximately fifty thousand dollars in unpaid fees that Tocci allegedly owes to JGI. In support of its motion for partial summaiy judgment and for entry of separate and final judgment, JGI argues that (1) JGI’s liability, if any, is limited by the terms of the JGI-Tocci contract; (2) Tocci’s breach of contract and breach of warranty claims fail as a matter of law because they are duplicative of its negligence claim; and (3) JGI is entitled to recover the outstanding fees owed to it on its counterclaim. [1]
After a hearing on November 16, 2004, and for the reasons stated below, the motion of Tocci as third-party plaintiff for partial summary judgment will be DENIED; and, the motions of JGI as third-party defendant for partial summaiy judgment and for entry of separate and final judgment will both be DENIED in that there appear to be genuine issues of material fact concerning JGI’s liability to Tocci that must be resolved at trial. Furthermore, JGI’s fourteenth affirmative defense is valid and appropriate, and the court will, sua sponte, order that the contract between Tocci and JGI limits the amount of JGI’s liability, if any, to $50,000.00 or to the total fee for services rendered by JGI on the project, whichever is greater. For that reason, Tocci’s request to strike JGI’s fourteenth affirmative defense will be denied.
BACKGROUND
In evaluating a motion for summary judgment, this Court relies on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen ofHingham, 419 Mass. 535, 539 (1995).
This dispute arises out of the design and construction of a boulder retaining wall (the “Wall Project”) as part of the Candlewood Hotel construction project in Burlington, Massachusetts (the “Hotel Project”). Tocci was the construction manager for the Hotel Project. In that capacity, Tocci retained JGI as the Project’s geotechnical engineer.
On February 2, 1998, JGI sent a letter agreement to Tocci, which proposed that JGI complete a geotechnical investigation and hydrogeologic assessment for the Hotel Project (the “Contract”). The Contract set the total estimated budget at nine thousand *566 seven hundred and fifty dollars. Furthermore, the Contract referenced and attached certain Terms and Conditions that contained a “Limitation of Liability” provision (the “Provision”), which states:
CLIENT agrees to limit JGI’s liability to CLIENT and all third parties arising from JGI’s professional acts, errors or omissions, such that the total aggregate liability of JGI to all those named shall not exceed $50,000 or JGI’s total fee for the services rendered on this project, whichever is greater. If CLIENT wishes to discuss higher limits and changes involved, he should speak with JGI. JGI-Tocci Contract ¶15.0
On March 17, 1998, without making any changes to the Provision, Tocci executed the Contract. Shortly after execution of the Contract, Tocci requested that JGI submit a certifícate of insurance. On or about May 29, 1998, JGI submitted the certificate of insurance evidencing professional liability insurance coverage in the amount of two million dollars.
Tocci and JGI executed six change orders to the Contract that resulted in an adjusted Contract price of $46,594.46. Neither party made any changes to the Contract Provision referred to above.
On June 6, 2000, the Hotel Project site experienced an intense rainstorm and the site received approximately 4.5 inches of rainfall in an eight-hour period. Later that evening, as a result of the force and volume of water flowing into the wall and the failure of a catch basin, a section of the retaining wall collapsed. As a result of the collapse, JGI provided additional engineering services on the Hotel Project. On September 13,2001, JGI submitted a statement to Tocci for these additional engineering services totaling $49,576.31.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving parly to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The construction of written contract provisions is an appropriate matter for the court to consider at summary judgment and may be decided as a matter of law. Urban Investment & Dev. Co v. Turner Constr. Co., 35 Mass.App.Ct. 100, 107 n.6 (1993). Where the language of a contract is unambiguous, the construction of the contract provisions is a question of law only, and the court must enforce the contract in accordance with the plain meaning of its terms. Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970).
Tocci argues that the limitation of liability provision of the Contract was never a component of the agreement between Tocci and JGI; however, the evidence before this court submitted through exhibits demonstrates otherwise. In executing the Contract,[2] Tocci agreed to limit JGI’s liability to Tocci and to third parties to fifty thousand dollars, or the fees JGI received for the Project, whichever was greater. Before signing the Contract, Tocci did not attempt to modify or amend the Provision in any way. By entering into such an agreement, Tocci agreed to accept the allocation of risk set forth in Contract and cannot now argue the unenforceability of the limitation of liability provision simply because it is unfavorable to Tocci’s position.
Tocci's second argument is that JGI waived the Provision when it sent Tocci certificates of insurance pursuant to an alleged telephone conversation during which Tocci discussed higher liability limits with JGI. In support of its argument, Tocci contends that JGI’s action of sending Tocci its certificate of insurance amounted to clear, decisive and unequivocal conduct of waiver of the Provision. See Glynn v. Gloucester, 9 Mass.App.Ct. 454, 462 (1980). This court disagrees.
In providing Tocci with evidence of its insurance policy, JGI neither waived its rights under the limitation of liability provision, nor intended to modify that provision; rather, JGI was following a common practice among contractors and subcontractors. See Donald Malecki et al., The Additional Insured Book at 293 (4th ed. 2000) (contractors commonly require that their subcontractors provide them with certificates of insurance as proof that such coverage has been purchased. Confirmatory certificates of this sort typically contain disclaimer language to dispel any suggestion that they confer any right upon the certificate holder.)
The decisive issue with respect to Tocci’s motions is which document — JGI’s certificate of insurance or the contract between Tocci and JGI — governs the amount of JGI’s liability, if any. That issue, whether an insurance certificate or binding contract governs the parties, appears to be one of novelty in the courts of the Commonwealth. Nevertheless, in the absence of any legal support, and relying solely on logic and common sense, this court finds that the certificate of insurance is an informational document evidencing the existence of an insurance policy and such a certificate in no way modifies or replaces the limitation of liability provision set forth in the operative document, that is the contract between the parties.[3]
*567 Deciding this issue on the specific facts of this case, the court finds that JGI’s liability, if any, arising out of its performance of professional engineering services on the Project, is limited by the terms of the contract between JGI and Tocci; and that such limitation was not modified or replaced by JGI’s submission to Tocci of its certificate of insurance.
ORDER
For the reasons stated above, the motion of Tocci as third-party plaintiff for partial summary judgment is DENIED and the motions of JGI as third-party defendant for partial summary judgment and for entry of separate and final judgment are DENIED in that there appear to be genuine issues of material fact concerning JGI’s liability to Tocci that must be resolved at trial.
Furthermore, in finding that JGI’s fourteenth affirmative defense is appropriate, the court, sua sponte, ORDERS that the contract between Tocci and JGI limits the amount of JGI’s liability, if any, to $50,000.00 or the total fee for services rendered by JGI on the project, whichever is greater, and DENIES Tocci’s motion to strike that fourteenth affirmative defense.

Nocci filed a further pleading in response to JGI’s motion for partial summary judgment on the limitation of liability issue in which it argues that (1) Tocci did not agree to a fifty-thousand-dollar cap on JGI’s potential liability and such provision did not become part of the JGI-Tocci contract; (2) Tocci and JGI modified the Contract and eliminated the Limitation of Liability provision; (3) JGI must be estopped from denying the existence of a two million dollar professional liability insurance policy; (4) JGI waived the purported contractual Limitation of Liability provision; (5) the Limitation of Liability provision violates public policy and is therefore void; (6) Tocci’s negligence claim does not extinguish its independent breach of contract and warranty claims; and, (6) that JGI is not entitled to recover $49,576.31 in allegedly outstanding fees because it improperly designed and supervised construction of the retaining wall.

The Contact contains the statement, “(ylou may formally enter into an agreement with us to accomplish the scope of work outlines above under the attached Terms and Conditions by signing the accompanying copy and returning it to us for our files.” Accordingly, an authorized Tocci representative’s signature is at the bottom of file Contract evidencing Tocci’s agreement to the Terms and Conditions, which contains the limitation of liability provision.

A certificate of insurance is defined as, “a document acknowledging that an insurance policy has been written and setting forth in general terms what the policy covers.” Black’s Law Dictionary. Furthermore, JGI’s certificate of insurance states, “[t]his certificate is issued as a matter of information only and confers no rights upon the certificate holder . . .,” which should have warned Tocci that the certificate of insurance did not extend, amend or alter the parties' rights under the contract.